**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROCK POINT PARTNERS LLC,<br><br>Plaintiff,<br><br>v.<br><br>TAMARISK CAPITAL MANAGEMENT LLC, SOUND CAPITAL SOLUTIONS LLC, and RYAN GORMAN,<br><br>Defendants. | Case No. 26-cv-<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Rock Point Partners LLC ("Rock Point") brings this Complaint against Defendants Tamarisk Capital Management LLC ("Tamarisk"), Sound Capital Solutions LLC ("Sound Capital"), and Ryan Gorman ("Gorman") (together, "Defendants") and alleges as follows:

## I. PRELIMINARY STATEMENT

1. This is an action for trademark infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a) against Defendants for their willful infringement of Rock Point's federally registered ADAPTIV trademark. Gorman, under false pretenses, approached Rock Point for its guidance and expertise regarding exchange-traded fund ("ETF") formation. After obtaining information from Rock Point and learning of its ADAPTIV ETF, Gorman directed Defendants to copy the ADAPTIV mark and form a competing ETF under a confusingly similar name. Defendants continue to create marketplace confusion and have disregarded repeated demands to stop their infringing conduct. Defendants' conduct has caused and continues to cause Rock Point damages and irreparable harm. Rock Point therefore seeks injunctive relief, monetary damages, and attorneys' fees and costs.

## II. PARTIES

2. Rock Point is a Wisconsin limited liability company with a principal office at 215 North Main Street, Suite 1040, West Bend, Wisconsin 53095.

3. Tamarisk is a recently formed Michigan limited liability company with a principal address of 301 Hoover Blvd., Suite 300, Holland, Michigan 49423 and is a subsidiary of Tamarisk Financial LLC, d/b/a West Michigan Advisors, Tamarisk Family Office, and Tamarisk Research (collectively, "Tamarisk Group"), which are registered to do business in Illinois. Tamarisk serves as sub-adviser to Defendants' DEFENDER RISK ADAPTIVE 500 ETF (the "Infringing ETF") and manages it on a day-to-day basis.

4. Sound Capital is a Delaware limited liability company with a principal address of 175 West Jackson Boulevard, Suite 240, Chicago, Illinois 60604 and is registered to do business in Illinois. Sound Capital serves as the Infringing ETF's investment adviser and has overall supervisory responsibility for its management and investments.

5. Gorman is an individual resident of Grand Rapids, Michigan. Gorman serves as the portfolio manager of the Infringing ETF. Gorman also maintains partial ownership and/or control in the Tamarisk Group.

## III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act 15 U.S.C. § 1051, *et seq.*, and 28 U.S.C. §§ 1331, 1338(a).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts giving rise to the claims asserted herein occurred and continue to occur in this District. Specifically, Defendants listed, manage, and trade the Infringing ETF through CBOE Global Markets, formerly known as the Chicago Board Options Exchange ("CBOE"),

which is headquartered in Chicago, Illinois.

8. Trades involving the Infringing ETF, which is actively managed by Defendants, occur within this District and involve Illinois residents.

9. The Infringing ETF has been and continues to be advertised and promoted by Defendants within this District to residents of this District, and its shares are traded on several CBOE exchanges, including the CBOE BZX Exchange, CBOE BYX Exchange, CBOE EDGA Exchange, and CBOE EDGX Exchange, which operate on and through data centers located within this District.

10. Defendants' actions, that Rock Point contends constitute improper passing off of Rock Point's ADAPTIV mark, occurred and continue to occur in this District.

11. Alternatively, venue is proper in this District under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendants pursuant to 735 ILCS 5/2-209.

12. Defendants purposefully availed themselves of the privilege of conducting business in Illinois and directed their unlawful conduct toward the state.

13. In the ordinary course of business, Defendants market and promote the Infringing ETF to Illinois residents and conduct securities transactions in Illinois and with Illinois residents, including transactions involving the Infringing ETF.

14. Defendants' contacts with Illinois are also attributable to one another because they became associated with one another to profit from creating the Infringing ETF, which they directed to be listed on CBOE.

15. Sound Capital also maintains its principal place of business in Chicago, Illinois, and is therefore subject to this Court's general personal jurisdiction.

## IV. FACTUAL BACKGROUND

### A. Rock Point and its ADAPTIV Trademark

16. Rock Point specializes in financial services and, *inter alia,* offers an ETF in connection with its ADAPTIV trademark (the "ADAPTIV® ETF"), which is publicly traded under the ticker ADPV.

17. Rock Point owns and operates the website, adpvetf.com, where it promotes its ADAPTIV® ETF and financial services.

18. Rock Point has been continuously using its ADAPTIV trademark in connection with the sale and promotion of the ADAPTIV® ETF and its financial services since 2022.

19. Rock Point has invested significant resources in developing, promoting and protecting the goodwill in the ADAPTIV trademark.

20. As a result of Rock Point's efforts, consumers have come to recognize the ADAPTIV trademark as being associated with high-quality financial services provided by Rock Point and the ADAPTIV® ETF.

21. The reputation and goodwill associated with the ADAPTIV trademark is of incalculable and inestimable value to Rock Point.

22. In addition to the strong common-law rights Rock Point owns in its ADAPTIV trademark, Rock Point also obtained federal trademark registrations from the United States Patent and Trademark Office for the following ADAPTIV marks:

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 8,068,431 | ADAPTIV | Cl. 036: Financial services, namely, operation, creation and management of exchange-traded funds for others; Financial services, namely, financial portfolio management, trading securities; Exchange-traded fund consultation services, advisory services, investment services, planning |

| | | |
|---|---|---|
| | | services, development services, research services and analysis services; Providing financial information; Providing financial information in the field of finance, financial investments and exchange-traded funds; Providing information, commentary and advice in the field of finance, financial investments, financial valuations and exchange-traded funds; Providing financial information via a website; Providing investors with financial information; Financial information; Providing financial brokerage and investment services with respect to securities and other financial instruments and products, namely, exchange-traded funds; Providing financial services with respect to securities and other financial instruments and products, namely, providing financial market news and commentary; Financial evaluation, tracking, analysis, consultancy, advisory and research services relating to securities and other financial instruments; Information, advisory, consultancy and research services relating to finance and investments; Management of portfolios of transferable securities; Financial planning and investment advisory services; Investment management in the fields of exchange-traded funds; Issuance and provision of financial products and investment products in the nature of exchange-traded funds; Creation, management, issuance and provision of securities portfolios. |
| 8,068,434 | Adaptiv | Cl. 036: Financial services, namely, operation, creation and management of exchange-traded funds for others; Financial services, namely, financial portfolio management, trading securities; Exchange-traded fund consultation services, advisory services, investment services, planning services, development services, research services and analysis services; Providing financial information; Providing financial information in the field of finance, financial investments and exchange-traded funds; Providing information, commentary and |

| | | |
|---|---|---|
| | | advice in the field of finance, financial investments, financial valuations and exchange-traded funds; Providing financial information via a website; Providing investors with financial information; Financial information; Providing financial brokerage and investment services with respect to securities and other financial instruments and products, namely, exchange-traded funds; Providing financial services with respect to securities and other financial instruments and products, namely, providing financial market news and commentary; Financial evaluation, tracking, analysis, consultancy, advisory and research services relating to securities and other financial instruments; Information, advisory, consultancy and research services relating to finance and investments; Management of portfolios of transferable securities; Financial planning and investment advisory services; Investment management in the fields of exchange-traded funds; Issuance and provision of financial products and investment products in the nature of exchange-traded funds; Creation, management, issuance and provision of securities portfolios. |
| 7,294,441 | ADAPTIV SELECT ETF | Cl. 036: Financial services, namely, operation and management of exchange-traded funds for others; Financial consulting in the field of exchange-traded funds; Financial services, namely, financial portfolio management, trading securities |

(collectively, the "**ADAPTIV Trademarks**").

23. The above ADAPTIV Trademarks are valid, subsisting, and in full force and effect, and constitute *prima facie* evidence of their validity and of Rock Point's ownership and exclusive right to use the ADAPTIV Trademarks. 15 U.S.C. §§ 1057(b), 1115(a). Attached hereto as **Exhibit A** are true and correct copies of the Registration Certificates for the ADAPTIV Trademarks.

**B. Gorman's Interaction with Rock Point**

24. In 2025, Mr. Gorman contacted Rock Point to request information on how to develop and launch an ETF.

25. Rock Point provided Mr. Gorman with significant information on how to develop, manage and run ETFs.

26. During this time, Mr. Gorman was well aware of Rock Point's ADAPTIV® ETF and its ADAPTIV Trademarks.

27. On information and belief, Gorman not only shared the information he obtained from Rock Point with Tamarisk and Sound Capital, but also suggested that Defendants should form the Infringing ETF under a confusingly similar name that incorporates "adaptive," and Gorman otherwise authorized, directed, and/or oversaw the infringing activities of Tamarisk and Sound Capital.

28. Defendants' purpose in selecting a confusingly similar name for the Infringing ETF was to intentionally deceive and confuse consumers in the marketplace and trade off the valuable goodwill associated with Rock Point's longstanding reputation for high-quality financial services and the ADAPTIV® ETF.

**C. Defendants' Unlawful Conduct**

29. On October 22, 2025, Defendants filed Form N-1A with the Securities and Exchange Commission with a draft prospectus for the Infringing ETF.

30. According to the Form N-1A and subsequently filed prospectus, Sound Capital serves as the investment adviser to the Infringing ETF, Tamarisk serves as its sub-adviser, and Gorman serves as the portfolio manager of the Infringing ETF and is primarily responsible for its day-to-day management.

31. Shortly after discovering Defendants' plans to launch the Infringing ETF, Rock Point sent Sound Capital a cease-and-desist letter demanding that Defendants desist from using a name for the Infringing ETF that is confusingly similar to the ADAPTIV Trademarks. A true and correct copy of that letter is attached as **Exhibit B**.

32. After not receiving any response, Rock Point sent Sound Capital a second letter on January 21, 2026. A true and correct copy of that letter is attached as **Exhibit C**.

33. Despite continued correspondence from Rock Point, Defendants refused to cease and desist.

34. On or around April 15, 2026, Defendants launched the Infringing ETF in Chicago. Defendants also traveled to Chicago to "ring the closing bell" at CBOE to promote and celebrate launching the Infringing ETF. *See* Figure 1 and Figure 2.




*Figure 1*[1]

[1] https://www.soundcapitalsolutions.com/cboe-closing-bell/ (as captured on 09/25/2026).




*Figure 2*[2]

35. Defendants continue to operate, manage, and profit from the Infringing ETF and promote it on a website published at https://tamariskcapital.com/SPDF, through which Illinois residents can, and do, obtain Defendants' promotional materials relating to the Infringing ETF.

36. Defendants are knowingly and willfully continuing to use the ADAPTIV Trademarks without Rock Point's authorization.

37. On information and belief, Defendants are taking the immediately above-described actions to intentionally deceive consumers in the marketplace, including in Illinois, and trade off the valuable goodwill associated with Rock Point's longstanding reputation for high-quality financial services and its exchange-traded fund.

38. Defendants continue engaging in business transactions with Illinois residents involving the Infringing ETF, which continues to be actively listed and traded on multiple

[2] https://www.instagram.com/p/Dax-5Frs6ps/ (as captured on 09/25/26).

Chicago-based CBOE exchanges, including on the CBOE BZX Exchange, the CBOE BYX Exchange, the CBOE EDGA Exchange, and the CBOE EDGX Exchange. On information and belief, shares of the Infringing ETF have been traded by Illinois investors and consumers.

**COUNT I**
**TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

39. Rock Point re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

40. Rock Point is the exclusive owner of the federally registered ADAPTIV Trademarks and has not authorized Defendants to use the ADAPTIV Trademarks in any way.

41. Through extensive use for several years, the ADAPTIV Trademarks have garnered significant recognition, goodwill, and value in the marketplace.

42. Rock Point's first use in commerce of the ADAPTIV Trademarks in 2022 predates Defendants' first unauthorized use of Rock Point's mark in 2025.

43. Rock Point therefore has priority of use and superior rights in the ADAPTIV Trademarks as against Defendants.

44. The designation used by Defendants for the Infringing ETF is confusingly similar to the ADAPTIV Trademarks.

45. The parties use their respective marks in connection with directly competing, actively managed ETFs.

46. Both the ADAPTIV® ETF and Infringing ETF use similar marketing and investment strategies to target the same consumers.

47. Rock Point and Defendants provide closely related—if not the same—services to the same classes of customers in the same channels of trade, in connection with their respective trademarks.

48. Both Rock Point and Defendants offer their respective ETFs through the same channels of trade, including securities exchanges, online brokerage platforms, and financial advisory channels, and market their funds to the same classes of consumers, including individual and institutional investors seeking exchange-traded fund products.

49. These channels are inherently overlapping in nature.

50. The overlapping nature of these channels and consumers heightens the likelihood that consumers will be confused as to the source of, or affiliation between, the parties' respective ETF products.

51. Defendants' infringement is willful.

52. Indeed, Gorman personally contacted Rock Point and obtained information about how to develop and launch an exchange-traded fund.

53. Gorman was well aware of Rock Point's rights in the ADAPTIV trademarks and, on information and belief, thereafter directed Defendants' adoption and use of a highly similar trademark that incorporates Rock Point's entire mark.

54. As the portfolio manager of the Infringing ETF and a co-owner of Tamarisk, Gorman authorized, directed and/or oversaw the infringing activities of Tamarisk and Sound Capital.

55. Defendants also received actual notice of Rock Point Partners' rights in the ADAPTIV Trademarks no later than the date of Rock Point's first cease and desist letter, yet proceeded to launch the Infringing ETF with full knowledge of Rock Point's objection and rights in the ADAPTIV Trademarks.

56. On information and belief, Defendants are using Rock Point's mark without authorization for the purpose of trading on the goodwill Rock Point has developed in the

ADAPTIV Trademarks.

57. Defendants' activities constitute willful trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

58. For at least the reasons stated above, Defendants' unauthorized use of the ADAPTIV Trademarks is causing and is likely to continue causing confusion, mistake, and deception among the public as to the identity, origin, affiliation, or sponsorship of the Infringing ETF and Rock Point.

59. Defendants' infringing conduct has directly and proximately caused and will continue to cause damage to Rock Point and is irreparably harming Rock Point, for which there is no adequate remedy at law.

60. Indeed, consumers and investors are likely to believe that Defendants' use of the designation that is confusingly similar to the ADAPTIV Trademarks on related and/or identical goods and services signifies, incorrectly, that Rock Point is either the source of those goods and services, or else somehow endorses Defendants.

61. Rock Point has lost, and continues to lose, revenue from the Defendants' above-described acts of willful infringement.

62. Moreover, Defendants' use of the designation that is confusingly similar to the ADAPTIV Trademarks on related and/or identical goods and services stands to cause, and likely already has caused, damage to Rock Point's reputation in the marketplace.

63. Rock Point respectfully requests that this Court take action to prevent Defendants' acts of willful infringement, and protect the trademark rights that Rock Point has painstakingly developed through the use of the ADAPTIV Trademarks in interstate commerce.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

64. Rock Point re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

65. Defendants' use of the designation that is confusingly similar to the ADAPTIV Trademarks on related and/or identical goods and services is causing and is likely to continue causing confusion, mistake, or deception as to the source of or association of those goods and services, including the Infringing ETF with Rock Point.

66. Defendants continue to use Rock Point's mark without authorization despite having full knowledge of Rock Point's priority of use of and consumer recognition in the mark.

67. The foregoing acts of Defendants constitute unfair competition and false designation of origin in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

68. Rock Point has sustained, and unless Defendants are enjoined will continue to sustain, substantial injury and damage.

69. Defendants' acts, unless enjoined, will cause Rock Point continuing irreparable harm for which Rock Point has no adequate remedy at law.

**JURY DEMAND**

Rock Point hereby demands trial by jury of all claims pursuant to Fed. R. Civ. P. 38.

**PRAYER FOR RELIEF**

Rock Point asks that Defendants be required to appear, answer and stand trial, and for the Court to enter judgment as follows:

A. Preliminary and permanently enjoining Defendants, their employees, agents, licensees and marketplace users, and all persons acting in concert with them:

i. from using the DEFENDER RISK ADAPTIVE 500 ETF trademark and any

colorable imitations of the ADAPTIV trademark in connection with the sale, advertising or promotion of goods and services; and

ii. from using in commerce any other word, term, name, symbol, logo or combination thereof, or any false designation of origin, false or misleading description or representation of fact, that is likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection or association of Defendants with Rock Point, or as to the origin, sponsorship or approval of Defendants' goods, services or commercial activities by Rock Point;

B. Entering judgment for damages in favor of Rock Point and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages and restitution, including disgorgement of profits;

C. Tripling any damages awarded and increasing any profits awarded as this Court finds just;

D. Requiring Defendants to pay Rock Point's attorneys' fees, costs, and expenses, as well as pre- and post-judgment interest; and

E. Providing any other remedy to which Rock Point may be entitled under law and equity.

Respectfully submitted on September 25, 2026

*/s/ Stephen R. Howe*
Stephen R. Howe (IL Bar No. 6300060)
Avery Hitchcock (WI Bar No. 1126995)
**HUSCH BLACKWELL LLP**
511 North Broadway
Suite 1100
Milwaukee, WI 53202
Telephone: 414-978-5393
steve.howe@huschblackwell.com
avery.hitchcock@huschblackwell.com

Berel Y. Lakovitsky (IL Bar No. 6342255)
**HUSCH BLACKWELL LLP**
120 S. Riverside Plaza
Suite 2200
Chicago, IL 60606
Telephone: 312-655-1500
berel.lakovitsky@huschblackwell.com

*Attorneys for Plaintiff, Rock Point Partners LLC*